IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

G&G CLOSED CIRCUIT EVENTS, LLC,         §
AS BROADCAST LICENSEE OF THE            §
SEPTEMBER 15, 2018 SAUL                 §
"CANELO" ALVAREZ V. GENNADY             §
"GGG" GOLOVKIN II CHAMPIONSHIP          §
FIGHT PROGRAM,                          §
                                        §        SA-21-CV-00871-OLG
          *Plaintiff,*                  §
                                        §
vs.                                     §
                                        §
THE PIPE CORNER OF THE SOUTH,           §
INC.,  QUESO PAN Y VINO, INC.,          §
INDIVIDUALLY; AND ERIK A.               §
ROSALES, INDIVIDUALLY,                  §
                                        §
          *Defendants.*                 §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion for Partial Summary Judgment [#21] and Plaintiff's Motion for Summary Judgment [#22]. This District Court referred this case to the undersigned pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#28]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiff's motion be **GRANTED IN PART** and Defendant's motion be **GRANTED** as unopposed.

## I.  Background

This is an anti-piracy case arising under the Federal Communications Act of 1934 ("the Communications Act"). The Communications Act prohibits piracy of radio and television

signals.  *See* 47 U.S.C. § 553 (prohibiting unauthorized interception or receipt of communications offered over a cable system); 47 U.S.C. § 605 (prohibiting unauthorized interception or receipt of programming transmitted via radio or satellite).  Plaintiff G&G Closed Circuit Events, LLC, is the license company that had the exclusive rights to sublicense the closed-circuit telecast of the September 15, 2018 Saul "Canelo" Alvarez v. Gennady "GGG" Golovkin II Championship Fight Program ("the Event").  (Compl. [#1], at ¶ 7.)  Plaintiff brings this action against two commercial establishments located in the same building in downtown San Antonio, Texas, and their individual owner/operator: (1) The Pipe Corner of the South, Inc. d/b/a The Pipe Corner of the South d/b/a The Pipe Corner and d/b/a Q.P.V. and d/b/a Queso Pan Y Vino (hereinafter "The Pipe Corner"); (2) Queso Pan Y Vino, Inc. d/b/a Queso Pan Y Vino (hereinafter "Queso Pan Y Vino"); and (3) Erik A. Rosales ("Rosales").  Plaintiff alleges that Defendants unlawfully intercepted the closed-circuit telecast of the Event and broadcast it to their patrons without purchasing a license to do so.  (*Id.* at ¶¶ 13–14.)  Plaintiff's Complaint seeks statutory damages and attorney's fees.  This case is set for a bench trial on March 13, 2023.

Plaintiff now moves for summary judgment, arguing there is no genuine issue for trial. In response, Defendants do not dispute their liability under the Communications Act but argue there is no evidence of any intentional violation and therefore damages should be limited. Defendants have separately filed a motion for partial summary judgment, arguing Plaintiff is not entitled to attorney's fees.  Plaintiff has indicated that it does not oppose Defendants' motion and that it is withdrawing its request for attorney's fees.  The motions are ripe for review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on its claim that Defendants unlawfully intercepted the transmission of the Event and broadcast it to their patrons in violation of the Federal Communications Act. The summary judgment record establishes that Defendants are liable

under the Act.  However, the Court should limit statutory damages to three times the licensing

fee Defendants should have paid to broadcast the Event, not the $10,000 originally requested by

Plaintiff.  Additionally, because Plaintiff has not provided evidence that Defendants' violation

was willful, the Court should decline to award Plaintiff the additional damages requested.

**A.      Defendants are liable for violation of 47 U.S.C. § 553.**

The Communications Act is a strict liability statute.  *Joe Hand Promotions, Inc. v. 152*

*Bronx, L.P.*, 11 F. Supp. 3d 747, 759 (S.D. Tex. 2014).  Thus, to prevail on its claim, Plaintiff

must only prove two elements: (1) the Event was shown; and (2) the exhibition of the Event was

not authorized by Plaintiff.  *Id.*  The undisputed summary judgment establishes both of these

elements, and, as already noted, Defendants do not contest their liability under the statute.

According to the evidence before the Court, Plaintiff exclusively possessed the

proprietary rights to exhibit and sublicense the Event to commercial establishments like The Pipe

Corner and Queso Pan Y Vino.  (Copyright Assignment Agreement [#22-1], at 22–25.)  In

Texas, the Event was available for broadcast at commercial establishments only through an

agreement with Plaintiff to purchase a sublicense to receive the Event, depending on the capacity

of the establishment.  (*Id.*)  Plaintiff's evidence further establishes that Defendants broadcast the

Event on September 15, 2018.  (Admissions [#22-1], at 71, 86, 100.)  There is no evidence that

Defendants received authorization to broadcast the Event, paid the sublicensing fee, or entered

into an agreement with Plaintiff to do so.  (*Id.* at 71–74, 86–89, 100–103.)  Rather, the

undisputed record establishes that Defendants paid their cable television provider, Spectrum

Business, $84.99 for the Event, which was the fee for the pay-per-view cable broadcast, not the

fee for broadcast for a commercial establishment.  (*Id.* at 74–76, 88–90, 102–104; Spectrum

Receipt [#22-1], at 142; Rosales Decl. [#23-1], at ¶¶ 7–8.)  As Defendants have admitted that

they received the transmission for the broadcast via their cable provider, not via satellite, Defendants committed a violation of 47 U.S.C. § 553, the portion of the Communications Act pertaining to piracy via cable systems.  Based on this evidence and the concession of Defendants in their response to Plaintiff's motion for summary judgment, Defendants are liable under Section 553 for the unlawful broadcast of the Event.

The evidence further establishes that Rosales is individually liable, along with his two businesses.  Plaintiff alleges Rosales's vicarious liability for the piracy, and there is certainly proof sufficient to find vicarious liability here.   Vicarious liability for a violation of the Communications Act is possible even where there is evidence that an individual defendant did not operate or control the bar at the time of the telecast.  *See J&J Sports Prods., Inc. v. Club Mandala, LLC*, Co. 7:18-CV-134, 2020 WL 1892956, at *2 (S.D. Tex. Jan. 13, 2020).  To prove vicarious liability in a federal anti-piracy case, Plaintiff need only show that Rosales "(a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation." *Joe Hand Promotions*, 11 F. Supp. 3d at 759 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997)).  Defendants have admitted that Rosales had a right to control his establishments on the date of the Event and benefited financially from their activities on the date of the Event.   (Admissions [#22-1]], at 78–80, 92–94, 108–110; Answers to Interrogatories [#22-1], 115.)

But in this case, Rosales is also individually liable.  The evidence establishes that Rosales is the only officer/owner and president/manager of The Pipe Corner and Queso Pan Y Vino; he personally paid Spectrum the $84.99 for the cable broadcast for the Event; and he operated or controlled the establishments at the time of the telecast.  Thus, Rosales is directly liable as an

individual for violation of Section 553.  In summary, all three Defendants are liable for the unauthorized transmission of the Event on September 15, 2018.

**B.      Plaintiff is entitled to damages in the amount of triple the licensing fee for the Event.**

A party aggrieved under the Communications Act may recover either actual damages or, where actual damages are difficult to prove, statutory damages up to $10,000.00.  47 U.S.C. § 553(c)(3)(A)(ii).  Plaintiff's motion for summary judgment requests the maximum statutory award of $10,000 for Defendants' violation.   However, in its reply, Plaintiff reduces its request to triple the amount of the licensing fee that the establishments would have paid to lawfully broadcast the Event for a total statutory award of $8,400.  The undersigned finds the requested $8,400 appropriate in this case.

In the Western District of Texas, prevailing plaintiffs in Communications Act cases are most often awarded a flat sum of statutory damages "derived from the costs the defendant would have incurred to purchase the rights to the broadcast, plus an additional amount sufficient to deter future violations and account for additional damages incurred by the plaintiff, such as the potential erosion of the plaintiff's customer base and profits made by the defendant in selling food and drinks to patrons."  *J&J Sports Prods., Inc. v. Lily's Bakery & Delicacies, Inc.*, No. 5-17-CV-01193-FB-RBF, 2019 WL 1793442, at *5 (W.D. Tex. Apr. 23, 2019), *report and recommendation adopted*, No. SA-17-CA-01193-FB, 2019 WL 2744187 (W.D. Tex. May 14, 2019) (collecting cases).  Tripling the license fee is a typical means of computing statutory damages in such cases.  *See, e.g.*, *J&J Sports Prods., Inc. v. Robles*, No. CV SA-19-CA-472-FB, 2019 WL 13191903, at *5 (W.D. Tex. Sept. 12, 2019) (finding award of $6,600, triple the license fee, reasonable).

The summary judgment record establishes here that, for the Event, the commercial sublicense fee ranged from $2,800 to $14,000 for establishments with seating capacities ranging from 1 up to 500.  (Pricing Rate Card [#22-1], at 54.)  The seating capacity of each of the establishments here was estimated to be 100 persons; thus, the fee would have been $2,800.00.  (*Id.*)  The Court should therefore award Plaintiff statutory damages in the amount of $8,400, as this award will both compensate Plaintiff for its losses and deter Defendants from engaging in future unlawful conduct.

**C.    Plaintiff has not established that it is entitled to additional damages for a willful violation.**

Where a defendant violates the Communications Act willfully and for purposes of commercial advantage or private financial gain, courts are authorized to increase the award of damages by an amount of not more than $50,000 for each violation.    47 U.S.C. § 553(c)(3)(A)(ii).  Plaintiff's motion for summary judgment argues it is entitled to an additional damages award of $10,000 for Defendants' willful violation.  The undersigned disagrees.

The evidence establishes that Rosales called his Spectrum representative on a business account and purchased the pay-per-view cable broadcast of the event.  (Admissions [#22-1], at 74–76, 88–90, 102–104; Spectrum Receipt [#22-1], at 142; Rosales Decl. [#23-1], at ¶¶ 7–8.)  There is no evidence he misrepresented to Spectrum that he intended to use the broadcast for personal viewing through a residential, rather than business, account.  There is also no evidence that Rosales installed, moved, or acquired any equipment with the capability of intercepting or diverting satellite signals or engaged in any other activity demonstrating he knowingly violated the Communications Act.  Rosales maintains that he believed he was acting lawfully, that Spectrum was authorized to sell him the Event, and that he was permitted to broadcast it through his business account to commercial customers.  (Rosales Decl. [#23-1], at ¶ 8.)

7

"To determine willfulness for commercial gain, courts look for evidence of a cover charge, increased prices for food and drinks, an increased number of patrons attending the establishment, and advertisements." *Lily's Bakery & Delicacies, Inc.*, 2019 WL 1793442, at *6. The evidence here establishes that there were fewer than 15 people at the establishments during the Event broadcast; there were no advertisements regarding the Event; and there were no food or drink specials offered to increase profits during the broadcast.  (Answers to Interrogatories [#22-1], at 128, 138, 133; Rosales Decl. [#23-1], at ¶¶ 10–11.)  Furthermore, a comparison of gross sales for the evenings of September 15, 2018 (the night of the Event), September 22, 2018, and September 29, 2018, show no marked difference in profits; each night grossed approximately $2,600 in sales.  (Rosales Decl. [#23-1], at ¶ 11.)  Finally, although the auditor here states that Defendants assessed a cover charge the night of the Event, Defendants vehemently contest this assertion.  Given that there was not an increase in profits on the night of the Event, the record does not contain any evidence of a commercial motive for financial gain. *Cf. J&J Sports Prods., Inc. v. Santos*, No. DR-17-CV-0028-AM-CW, 2018 WL 1887294, at *5 (W.D. Tex. Feb. 20, 2018) ("By blatantly advertising a free viewing of a program that would otherwise cost money if viewed privately in one's home, Defendants intended to entice patrons into their lounge to create business or offer patrons incentives not to leave (and spend more money).").   The summary judgment record does not support an award of additional damages here.  Plaintiff's motion for summary judgment should therefore be granted as to liability and for a statutory award of $8,400, but no additional damages for willfulness should be assessed.

### IV.  Defendants' Partial Motion for Summary Judgment

Finally, Plaintiff's Complaint requests an award of attorneys' fees and costs pursuant to Section 553(c)(2)(C) in the amount of one third of the damages awarded or alternatively the

hourly time billed on this matter, along with fees for post-trial and appellate services. Defendants move for partial summary judgment prohibiting the award of attorneys' fees on the basis that Plaintiff failed to provide any initial disclosures or designate experts in accordance with the Court's Scheduling Orders to support the requested award.  Defendants further argue that Plaintiff's counsel has not diligently represented Plaintiff in this case and had demonstrated a pattern of nonresponsive behavior and lack of attention throughout this litigation.  For example, Plaintiff failed to file a response to Defendants' motion to dismiss, resulting in a Show Cause Order, missed deadlines, and did not respond to Defendants' counsel regarding case management.

In response to Defendants' motion, Plaintiff indicates that it is unopposed to the relief requested by Defendants and does not contest Defendants' motion.  If necessary, Plaintiff agrees to seek leave of Court to amend its Complaint to remove the claim for attorneys' fees.  In light of Plaintiff's lack of opposition to the motion, the Court should grant Defendants' motion for summary judgment as to attorney's fees as unopposed.

### V.  Conclusion and Recommendation

Having considered the parties' motions, the responses and reply, the summary judgment record, and the governing law, the undersigned recommends that Plaintiff's Motion for Summary Judgment [#22] be **GRANTED IN PART,** as set forth herein, and Defendant's Motion for Partial Summary Judgment [#21] be **GRANTED** as unopposed.  Defendants are liable for a violation of 47 U.S.C. § 553, and Plaintiff is entitled to statutory damages in the amount of $8,400.  Plaintiff is not, however, entitled to an additional award for a willful violation or for an award of attorney's fees.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 11th day of January, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE